Filed 5/19/22  P. v. Player CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>MARCUS WILLIAM PLAYER,<br><br>     Defendant and Appellant. | B311739<br><br>(Los Angeles County<br>Super. Ct. No. A900447) |

APPEAL from an order of the Superior Court of Los Angeles County, Nicole C. Bershon, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Marcus William Player appeals from the trial court's order denying his petition under Penal Code[1] section 1170.95 to vacate his conviction for felony murder. Defendant contends the trial court improperly relied on evidence from a co-defendant's trial to find defendant was a major participant in the underlying felony and acted with a reckless indifference to life. Based on the trial court's comments at the evidentiary hearing, we conclude the challenged evidence was not in fact essential to the trial court's ruling, but merely reinforced a finding the trial court already had reached based on other evidence. In short, the trial court made clear it would make the same finding even without the evidence from the co-defendant's trial.

Accordingly, we affirm.

## FACTUAL BACKGROUND

The following summary is derived from our opinion in defendant's direct appeal, *People v. Player* (Jan. 2, 1985, 2d Crim. No. 45127) [nonpub. opn.] (*Player*). Several courts have held that recent amendments to section 1170.95 prohibit courts from relying on factual summaries from prior appellate opinions when making determinations under that statute. (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9; *People v. Flores* (2022) 76 Cal.App.5th 974, 981; *People v. Clements* (2022) 75 Cal.App.5th 276, 292 (*Clements*).) We include the following information solely to provide background and context for the parties' arguments, and do not rely on it to resolve this appeal.

---

[1] Unspecified statutory citations are to the Penal Code.

2

Late in the evening on December 18, 1981, defendant proposed to Walter Fonteno that they commit a robbery. The two men went to the apartment of Andre Davis. Defendant's brother, Lavelle Player, was there as well.[2] Defendant explained his robbery plan and said he had a gun. Lavelle agreed to participate in the robbery.

The four men went outside and defendant showed them a gun he had in the trunk of his car. Lavelle asked if the gun worked. Defendant fired two shots into a vacant lot and told the others there were three bullets left in the gun.

Davis returned to his apartment and defendant, Lavelle, and Fonteno drove off in defendant's car. Defendant suggested they look for robbery targets near a Denny's restaurant, and the others agreed.

Defendant parked in the Denny's upper parking lot, divided by a fence from the lower parking lot. The three men saw a van pull into the lower parking lot. Defendant gave the gun to Lavelle, and Lavelle and Fonteno jumped over the parking lot fence and approached the van.

Toney Lewis and Carolyn Spence were in the van. Spence testified that as she and Lewis were getting out, two men approached them. One man told Spence it was a robbery and demanded her purse. The other man pointed a gun at Lewis and demanded his coat and wallet. Lewis said he did not have a wallet and would not give up his coat.

---

[2] Because defendant and his brother have the same last name, to avoid confusion we will refer to his brother by his first name. No disrespect is intended.

According to our prior opinion, "Spence heard someone say, 'Take the van.' This was repeated several times." (*Player*, *supra*, 2d Crim. No. 45127.)

Lewis told the gunman he would not give him anything, and the gunman said, "That's okay—you're going to die anyway." The gunman took a gold chain from around Lewis's neck and took the keys from the ignition. He then shot Lewis, and ran away with the other robber.

When Lavelle and Fonteno got back to defendant at the upper parking lot, he told them not to get in his car but to meet him back at Davis's apartment, which they did.

Investigators identified defendant, Lavelle, and Fonteno as suspects. Fonteno ultimately confessed, and agreed to a plea bargain for a five-year sentence in exchange for his testimony.

Defendant, while in jail, arranged to put pressure on Davis not to testify. Defendant also told his common-law wife not to testify.

At trial, the defense put forth witness testimony that defendant was at a bar at the time of the robbery and that Lavelle and Fonteno were responsible for the crime, not defendant.

## PROCEDURAL BACKGROUND

A jury convicted defendant of first degree murder, robbery, and attempted robbery. The jury found true the special circumstance that the murder was committed while defendant was engaged in an attempted robbery, and also found true allegations supporting firearm enhancements. The trial court sentenced defendant to life without the possibility of parole for the murder, and stayed the sentences on the robbery and attempted robbery counts.

4

In defendant's direct appeal from his convictions, we reversed the special circumstance finding for instructional error, but otherwise affirmed the judgment. On remand, the trial court resentenced defendant to 31 years 8 months to life.

In 2018, defendant filed a petition to vacate his murder conviction under section 1170.95, claiming he could not be found guilty in light of amendments to the felony murder statute, section 189. Defendant was no longer in custody at this time.

The People filed an opposition, arguing, inter alia, that defendant either had an intent to kill or was a major participant in the robbery and acted with reckless indifference to human life, thus making him culpable even under the amended section 189. The trial court found the petition stated a prima facie basis for relief, appointed counsel, and issued an order to show cause.

As the parties prepared for the evidentiary hearing, most of defendant's trial record could not be located, including almost all of the reporter's transcript. The People provided the trial court with the transcript from the preliminary hearing, the transcript of the closing arguments at trial, police and probation reports, and our opinion from defendant's original appeal.

The People also provided the trial court with the record from Lavelle's separate trial. This included two volumes of clerk's transcripts, six volumes of reporter's transcripts, and the Court of Appeal opinion from Lavelle's direct appeal, decided by our colleagues in Division Three.[3]

---

[3] Many of the materials provided to the trial court, including the preliminary hearing transcript and the record from Lavelle's trial, were not included in the record originally provided to us in this appeal. At our request, the Attorney General augmented the record with the missing materials. The parties

A difference between the summary of evidence in our prior opinion from defendant's direct appeal, and the record from Lavelle's trial, is attribution of the "Take the van" statement during the robbery. As noted, our prior opinion stated only that "someone" said, "Take the van." During Lavelle's trial, however, Fonteno testified it was defendant who said, "Take the van." This testimony attributing the statement to defendant also was included in the factual summary in Lavelle's prior appellate opinion.

Defendant argued below that the materials from Lavelle's trial were inadmissible because they were not part of defendant's record of conviction, and using testimony from a trial of which defendant was not a part was unfair and raised an issue under the Confrontation Clause. He also argued the police reports were inadmissible hearsay.

The People argued the probation and police reports were admissible as "reliable hearsay." The People similarly argued Lavelle's trial record, "in particular statements under oath, subjected to challenge, and corroborated by other evidence," as well as the opinion from Lavelle's direct appeal were "reliable" and therefore admissible. It was the People's position, however, that even without this additional evidence there was enough in defendant's own record of conviction, including the opinion from his direct appeal and the preliminary hearing transcript, to find him ineligible for resentencing beyond a reasonable doubt.

The trial court did not rule expressly on defendant's evidentiary objections, but the court's discussion of the evidence

---

then submitted supplemental briefing addressing the impact, if any, the additional materials have on this appeal.

at the evidentiary hearing, described *post*, indicated it considered the police reports and Lavelle's trial transcript and appellate opinion as part of its analysis.

Before conducting the hearing, the trial court also raised the question of what standard of proof to apply when determining whether defendant was still guilty of murder despite the amendments to the felony-murder statute. At the time of the hearing the Courts of Appeal were split on the question, with some holding the trial court should decide as an independent factfinder whether defendant was still guilty beyond a reasonable doubt, and others holding the trial court should determine only whether there was substantial evidence from which a jury could find the defendant was guilty. (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)

Recognizing the split of authority, the trial court evaluated the evidence under both standards at the hearing. After hearing argument on March 26, 2021, the court concluded under either standard defendant was ineligible for resentencing under section 1170.95.

The court first explained its ruling under the substantial evidence standard. The People's theory was that defendant was guilty of felony murder under the amended section 189 because he was a major participant in the underlying robbery and acted with reckless indifference to human life. The court found it was "clear that [defendant was] a major participant," because the robbery was his idea, he chose the location and the victims, and provided the weapon. The court found it was "undisputed" that defendant "was the ring leader."

As for reckless indifference, the trial court noted the evidence that Lavelle asked defendant whether the gun worked,

7

thus "telegraphing to [defendant] that there is a possibility [Lavelle] actually might fire that gun." Rather than dissuade Lavelle from using the gun, defendant test fired it to show it worked, and indicated there were three bullets remaining.

The trial court found there also was evidence that defendant was at the scene of the crime, and although he may not have been close enough to the van to prevent the shooting, he could have rendered aid or called the police afterwards. The court concluded that "all of that alone, I think, is more than enough that a jury could find beyond a reasonable doubt that [defendant] was a major participant with reckless indifference."

The trial court went on to discuss the evidence that someone during the robbery said, "Take the van." The court found "the record is very clear . . . that the shooting occurred because the individual didn't want to give up his van." When someone said, "Take the van," thus elevating the crime from a robbery to a carjacking, defendant again had an opportunity to stop the escalation and say, "We're not doing this. Take this stuff and run." The trial court stated this evidence "in and of itself . . . leads to reckless indifference." In further support, the trial court noted evidence of "consciousness of guilt," including defendant's efforts to prevent Davis from testifying.

The trial court then explained its ruling under the reasonable doubt standard, in which it sat as an independent finder of fact. The court noted it was "uncontested" that defendant planned the robbery, supplied the gun, and test fired it when his brother asked if it worked. "The only additional item that is in dispute is the issue whether he said, 'Take the van.'" The court stated the police report indicated defendant said it, and that report "is reliable because it's consistent with testimony in

8

Lavelle Player's case, as well as the record of the Court of Appeal decision in Lavelle Player's case.  [¶]  So that all gives it that additional level of corroboration.  It's all been corroborated multiple times."

The trial court continued, "[E]ven without a direct attribution to [defendant] of the ['Take the van' statement], I believe there's certainly enough . . . [under] the substantial evidence standard; but if it's . . . beyond a reasonable doubt that [the People have] to prove . . . , for all of the reasons I said before what I believe a reasonable jury could find, . . . exercising my role as a fact finder, I believe [there is] proof beyond a reasonable doubt that he's a major participant with reckless disregard.  I think it's clear he's a major participant.  The only issue is whether he's recklessly indifferent.  [¶]  I think the evidence is clear even without a direct attribution to [defendant] of 'Take the van.'  When [the prosecution] adds that additional evidence [attributing the statement to defendant], I think it puts it over the top for me also beyond a reasonable doubt . . . ."  The court found that when the crime "morph[ed]" from stealing the chain and purse to taking the van, that was the "causation that leads to the shooting."  Defendant, by saying, "Take the van," was "encouraging them and that leads to the shooting."

Defendant timely appealed.

## DISCUSSION

### A.    Applicable Law

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) amended section 189 to limit murder liability based on a felony murder theory to a person who:  (1) was the actual killer; (2) though not the actual killer, acted "with the intent to kill" and

"aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder; or (3) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)[4]

Senate Bill No. 1437 also enacted section 1170.95, which provides a procedure by which a person convicted of murder under a theory invalidated by that bill, including felony murder, may petition to vacate the conviction. (*People v. Mejorado* (2022) 73 Cal.App.5th 562, 567; § 1170.95, subd. (a)(3).) If the petitioner makes a prima facie showing the petitioner is eligible for relief, the trial court must issue an order to show cause, then hold an evidentiary hearing to determine whether to vacate the conviction. (*Garrison*, *supra*, 73 Cal.App.5th at p. 743; § 1170.95, subds. (c), (d).)

The Legislature amended section 1170.95 in Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022. Among other things, the amendments resolved the split of authority regarding the standard of proof at the evidentiary hearing, clarifying that a showing of substantial evidence is not enough. Rather, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended" by Senate Bill No. 1437. (§ 1170.95, subd. (d)(3).)

Senate Bill No. 775 also amended the language in section 1170.95, subdivision (d)(3) regarding the evidence a trial court

---

[4] Senate Bill No. 1437 also eliminated liability for murder under the natural and probable consequences theory. (*People v. Gentile* (2020) 10 Cal.5th 830, 849.) That theory is not at issue in this appeal.

may consider. That subdivision now provides, in relevant part, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).)

## B. The Trial Court's Ruling Did Not Depend On Evidence From Lavelle Player's Trial

As an initial matter, there is some suggestion in defendant's opening brief that the trial court erred by applying the substantial evidence standard at the evidentiary hearing. Defendant is correct that, as clarified by Senate Bill No. 775, section 1170.95 requires the prosecution to prove beyond a reasonable doubt the petitioner is ineligible for relief. (§ 1170.95, subd. (d)(3).) As described *ante*, however, the trial court hedged its bets given the split of authority at the time, and resolved the petition under both substantial evidence standard and a reasonable doubt standard. We therefore have a ruling under the proper standard of proof that we may review.

Apart from the intimation that the trial court applied an incorrect standard of proof, defendant's only argument on appeal is that the trial court erred by relying on Lavelle's record, specifically the transcripts from his trial and the opinion from his direct appeal, to find that defendant acted with reckless indifference to life. Defendant claims the transcripts and opinion from Lavelle's record are inadmissible hearsay and considering them would violate the Confrontation Clause of the United States Constitution. The trial court's error was prejudicial, defendant

11

argues, because Lavelle's transcripts and opinion provided the only evidence that defendant said, "Take the van" during the robbery. Defendant contends this evidence was essential to the trial court's finding beyond a reasonable doubt that he had acted with reckless indifference.

We decline to decide whether the materials from Lavelle's record were admissible, because we conclude the trial court's ruling did not depend on evidence that defendant said, "Take the van." Rather, the hearing transcript reveals that evidence added an extra, albeit unnecessary in the trial court's view, layer of assurance on the trial court's finding of reckless indifference.

As discussed, the trial court stated, when applying the reasonable doubt standard, "I think it's clear he's a major participant. The only issue is whether he's recklessly indifferent." Immediately following, the trial court stated, "I think the evidence is clear even without a direct attribution to [defendant] of 'Take the van.'" In other words, the evidence that defendant was recklessly indifferent was "clear" to the trial court regardless of whether he or someone else said, "Take the van."

The trial court then said, "When [the prosecution] adds that additional evidence [attributing the statement to defendant], I think it puts it over the top for me also beyond a reasonable doubt . . . ." This sentence must be read in the context of the sentence immediately preceding it, in which, again, the trial court stated the evidence was clear even without attributing "Take the van" to defendant. Given that context, the trial court's reference to the additional evidence from Lavelle's record served to reinforce the conclusion the court already had reached, but did not indicate the additional evidence was essential to that conclusion.

Defendant argues that when the trial court stated that "the evidence is clear even without a direct attribution to [defendant] of 'Take the van,' " the trial court meant "clear" under the substantial evidence standard, not the reasonable doubt standard. This argument disregards that immediately prior to the sentence quoted by defendant, the trial court stated it was "exercising [its] role as a fact finder," and in that role the court "believe[d] [there is] proof beyond a reasonable doubt that he's a major participant with reckless disregard. I think it's clear he's a major participant. The only issue is whether he's recklessly indifferent." Only after that preface did the court state "the evidence is clear even without a direct attribution," thus signaling this comment was in the context of a reasonable doubt assessment, not a substantial evidence analysis.

We therefore disagree with the threshold premise underlying defendant's arguments on appeal that the trial court's ruling depended on evidence from Lavelle's record. Because we conclude the trial court reached its finding independent of that evidence, we need not address whether that evidence was admissible.

Apart from the admission of evidence from Lavelle's record, defendant raises no other challenges to the trial court's ruling. (See *Clements*, *supra*, 75 Cal.App.5th at p. 293 [appellant has burden to demonstrate reversible error].) We therefore have no basis to question any other aspect of that ruling, and affirm it.

13

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>

 

 

                                             BENDIX, J.

We concur:

ROTHSCHILD, P. J.

MORI, J.*

---

    **\*** Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.